FILED
United States Court of Appeals
Tenth Circuit

December 11, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

KONAN Y. KOUADIO,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 14-9501
(Petition for Review)

---

ORDER AND JUDGMENT[*]

---

Before **HOLMES**, **MATHESON,** and **McHUGH**, Circuit Judges.

---

Petitioner Konan Kouadio appeals from a final order of removal from the Board of

Immigration Appeals (the Board). In the removal order, the Board affirmed the

immigration judge's (IJ) determination that Mr. Kouadio was removable and the IJ's

---

[*] After examining Appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

denial of Mr. Kouadio's two applications for cancellation of removal. Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we affirm.

## BACKGROUND

Mr. Kouadio is a native and citizen of the Ivory Coast. He was admitted to the United States in April 1994 as a nonimmigrant B2 visitor authorized to remain in the United States until October 2, 1994. Mr. Kouadio remained in the United States beyond that date without authorization.

On September 11, 2000, Mr. Kouadio married Mary Rodriguez, a U.S. citizen. According to Mr. Kouadio, he and Ms. Rodriguez lived together for approximately a year and a half after they married, had a good marriage, and did not marry to affect his immigration status. On March 5, 2001, Ms. Rodriguez filed a Petition for Alien Relative (Petition) on behalf of Mr. Kouadio, which was meant to support his request for an adjustment of status based upon his marriage to a U.S. citizen.

On April 29, 2004, Ms. Rodriguez formally withdrew her Petition. In her withdrawal affidavit, Ms. Rodriguez asserted she married Mr. Kouadio to help him obtain U.S. citizenship, and that Mr. Kouadio paid her $3,000 initially, and $300 per month, to do so. According to Ms. Rodriguez, the couple had never lived together and had not consummated the marriage.

On July 23, 2004, the Department of Homeland Security (DHS) initiated removal proceedings against Mr. Kouadio. DHS charged Mr. Kouadio with removability on three independent grounds: (1) as an alien inadmissible at the time of adjustment of status

based on an attempt to procure admission through fraud or willful misrepresentation of fact;[1] (2) as an alien who, once lawfully admitted, remained in the U.S. longer than permitted;[2] and (3) as an alien present in the U.S. in violation of the law.[3] Mr. Kouadio conceded his removability under the second and third grounds, but contested his removability under DHS's first asserted ground. Specifically, Mr. Kouadio disputed DHS's allegation that he married Ms. Rodriguez to fraudulently affect his immigration status.

At Mr. Kouadio's removal hearing, he testified his marriage to Ms. Rodriguez was not a sham. He claimed the couple was happily married initially, but began having problems when Ms. Rodriguez experienced financial trouble and her car was repossessed. According to Mr. Kouadio, Ms. Rodriguez asked him to purchase a car for her and threatened to report him to immigration officials if he did not comply. He testified she withdrew her Petition in revenge for his refusal to do so.

At the hearing, DHS submitted Ms. Rodriguez's sworn statement withdrawing her Petition and asserting Mr. Kouadio paid her to enter into a fraudulent marriage for immigration purposes. DHS also questioned Mr. Kouadio about information he included in two applications for asylum filed shortly after he entered the United States. In his first

---

[1] *See* 8 U.S.C. § 1227(a)(1)(A); *id.* § 1182(a)(6)(C)(i).

[2] *See id.* § 1227(a)(1)(C)(i).

[3] *See id.* § 1227(a)(1)(B).

asylum application dated July 5, 1994, Mr. Kouadio stated he was married to a Ms. Toure. But in his second asylum application dated November 17, 1994, Mr. Kouadio asserted he was unmarried. When asked about his relationship with Ms. Toure, Mr. Kouadio testified the two were never formally married but lived together in Colorado. He argued his statement in his first asylum application that the two were married was not false because they were living together at the time and Colorado law recognized common law marriage after three months of cohabitation. He further testified he therefore considered Ms. Toure to be his spouse under Colorado law, but the couple had never obtained any documentation of the marriage. However, Mr. Kouadio conceded he and Ms. Toure had never filed for divorce or otherwise acted officially to terminate the relationship.

After considering the documentary evidence, as well as Mr. Kouadio's testimony, the IJ concluded Mr. Kouadio had willfully misrepresented a material fact in his change of status application by entering into a fraudulent marriage with Ms. Rodriguez. Specifically, the IJ found Mr. Kouadio's testimony about his marriage to Ms. Rodriguez was "called into doubt" by the fact he concealed his earlier common law marriage to Ms. Toure. Certified Administrative Record (CAR) 24. Moreover, the IJ found Ms. Rodriguez's statement credible that Mr. Kouadio had paid her to enter into the marriage to affect his immigration status. Accordingly, the IJ concluded DHS had demonstrated by clear and convincing evidence that Mr. Kouadio was removable pursuant to 8 U.S.C. § 1227(a)(1)(A) as an alien who was inadmissible for attempting to procure an

-4-

immigration benefit by fraud or willful misrepresentation of a material fact. Because the IJ sustained the first charge of removability and Mr. Kouadio conceded the other two charges, he was ultimately deemed removable on three independent grounds.

The IJ then turned his attention to Mr. Kouadio's two applications for cancellation of removal.[4] First, Mr. Kouadio sought cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(2), which provides for cancellation of removal for a battered spouse. Mr. Kouadio alleged he qualified as a "battered spouse" under the statute because he suffered "extreme cruelty" at Ms. Rodriguez's hands during the couple's marriage. CAR 169. The IJ rejected Mr. Kouadio's request for cancellation because he had already determined Mr. Kouadio's marriage to Ms. Rodriguez was a sham, which precluded a finding Mr. Kouadio was a battered spouse. As an alternative basis to deny Mr. Kouadio's application for cancellation of removal, the IJ determined Mr. Kouadio had not met his burden of establishing he met the definition of a battered spouse.

Second, Mr. Kouadio sought cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1), which allows for cancellation of removal for certain aliens who have been in the country for at least ten years and whose removal would "result in exceptional and extremely unusual hardship to the alien's spouse . . . who is a citizen of the United States." Mr. Kouadio's second application for cancellation of removal referenced only

---

[4] Mr. Kouadio also requested voluntary departure pursuant to 8 U.S.C. § 1229c. The IJ denied this request because he found Mr. Kouadio had failed to establish good moral character for the requisite statutory period. Mr. Kouadio has not appealed this determination.

Ms. Rodriguez, who could not be a qualifying spouse because the couple had divorced in 2005. As such, the IJ concluded Mr. Kouadio had failed to establish that he had a qualifying U.S. relative. As an alternate ground for its decision, the IJ determined Mr. Kouadio's common law marriage to Ms. Toure would have rendered any subsequent marriage invalid. Consequently, the IJ held Mr. Kouadio could make no claim of undue hardship as to a U.S. spouse based on his marriage to Ms. Rodriguez.

Mr. Kouadio appealed to the Board, contesting both the IJ's determination that he was inadmissible for attempting to obtain an immigration benefit by fraud or willful misrepresentation and the IJ's denial of his applications for cancellation of removal. Before the Board, Mr. Kouadio argued DHS failed to meet its burden of establishing his inadmissibility on the basis of a fraudulent marriage by clear and convincing evidence. The Board found no reason to disturb the IJ's determination because it concluded Ms. Rodriguez's statement constituted sufficient evidence to support the determination that the marriage was a sham.

The Board then addressed Mr. Kouadio's applications for cancellation of removal. The Board declined to reach the issue of whether Mr. Kouadio's claim of being a battered spouse was precluded by the IJ's determination that his marriage to Ms. Rodriguez was fraudulent. Instead, the Board affirmed on the alternative ground that Mr. Kouadio's "bare and unsupported assertions" of abuse were insufficient to meet his burden of establishing he was a battered spouse. CAR 5.

As to Mr. Kouadio's second application for cancellation of removal, the Board declined to address the IJ's determination that Mr. Kouadio's common law marriage to Ms. Toure precluded him from seeking cancellation on the basis of extreme hardship to a U.S. spouse. Rather, the Board affirmed on the alternative ground that Mr. Kouadio's application for cancellation of removal listed only Ms. Rodriguez as his qualifying U.S. spouse. As there was no dispute Ms. Rodriguez and Mr. Kouadio were divorced at the time of his removal hearing, the Board concluded Mr. Kouadio's application did "not indicate a current qualifying relative upon which a claim of cancellation of removal can be predicated." CAR 4. Mr. Kouadio appeals.

## DISCUSSION

When, as in this case, a single member of the Board affirms the IJ's ruling, this court reviews the Board's ruling and "will not affirm on grounds raised in the IJ decision unless they are relied upon by the [Board] in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006); *see also* 8 C.F.R. § 1003.1(e)(5). However, "we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro*, 443 F.3d at 1204. The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4). Accordingly, our review looks to the administrative record to ensure "factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro*, 443 F.3d at 1204. We review the

-7-

agency's legal determinations de novo. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

To resolve this appeal, we address two issues. First, we examine Mr. Kouadio's challenge to the Board's determination that he is removable on the basis he attempted to obtain immigration benefits through a fraudulent marriage to Ms. Rodriguez. Second, we examine the denial of his application for cancellation of removal on the basis that he was a battered spouse.[5]

Mr. Kouadio frames his argument in his brief as a due process argument. But he fails to cite any relevant legal authority to support an assertion that his removal proceedings were constitutionally infirm. Though he correctly asserts aliens are entitled to due process in removal proceedings, he has failed to articulate a cognizable argument under the Due Process Clause. Accordingly, we do not consider this alleged constitutional argument further. *See* Fed. R. App. P. 28(a)(8); *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014) (refusing to consider inadequately briefed arguments on appeal).

---

[5] The Government argues Mr. Kouadio has waived any challenge to the denial of his second application for cancellation of removal because he failed to raise it in his opening brief. Having reviewed the briefing, we agree. Therefore, we do not consider Mr. Kouadio's challenge to the denial of his second application for cancellation of removal further. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (noting arguments not raised in the opening brief are generally waived).

To the extent Mr. Kouadio directly challenges the Board's determination of removability, he argues DHS failed to prove by clear and convincing evidence that his marriage to Ms. Rodriquez was fraudulent. As the Board noted, DHS presented evidence in the form of a sworn statement from Ms. Rodriguez in which she averred Mr. Kouadio paid her to marry him to fraudulently affect his immigration status and that the couple had never lived together or consummated the marriage. In response, Mr. Kouadio offered only limited documentary evidence in support of his contention the marriage was bona fide. Though he claimed to have additional evidence, he never presented it to the IJ or the Board. Based, on this record, we agree with the Board that Ms. Rodriguez's statement provided substantial evidence that the marriage was fraudulent.[6]

Because we conclude the Board did not err in finding Mr. Kouadio removable, we next turn our attention to his application for cancellation of removal. Mr. Kouadio challenges the Board's determination that he did not fall within the definition of a battered spouse. But we lack jurisdiction to review that ruling. The Board determined Mr. Kouadio failed to demonstrate he met the definition of a battered spouse under USCIS regulations, which define a battered spouse as one who "has been battered or subjected to

---

[6] As both the IJ and the Board noted, Mr. Kouadio has conceded his removability on two other independent grounds: as an alien who, once lawfully admitted, remained in the U.S. longer than permitted and as an alien present in the U.S. in violation of the law. Mr. Kouadio has not challenged these alternative grounds for removal on appeal. As such, even if this court were to determine the Board erred in affirming the IJ's determination that Mr. Kouadio's marriage to Ms. Rodriguez was fraudulent, it would make no difference to Mr. Kouadio's removability.

extreme cruelty by a spouse . . . who is or was a United States citizen." 8 U.S.C. § 1229b(b)(2)(A)(i)(I); *accord* 8 C.F.R. § 204.2(c)(1)(i)(E). Though Mr. Kouadio claimed he suffered "extreme cruelty" at the hands of Ms. Rodriguez because she "manipulated him, deceived him, and committed fraud," CAR 44, the Board found Mr. Kouadio's "bare and unsupported assertions" of abuse were insufficient to establish he suffered "extreme cruelty," CAR 5. Whether an alien has demonstrated he suffered "extreme cruelty" under § 1229b involves the exercise of agency discretion and is therefore not reviewable by this court. *See Perales-Cumpean v. Gonzales*, 429 F.3d 977, 982–83 (10th Cir. 2005); 8 U.S.C. § 1252(a)(2)(B) (holding court had no jurisdiction to review "any judgment regarding the granting of relief under section . . . 1229b"). As a result, we lack jurisdiction to review the Board's discretionary determination.

## CONCLUSION

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT

Carolyn B. McHugh
Circuit Judge

-10-